UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-00812-MOC

| | |
|---|---|
| ERIC H. SEAMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NANCY A. BERRYHILL, ) | |
| **Acting Commissioner of Social Security** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on plaintiff's (#11) and defendant's (#15) cross Motions for Summary Judgment. The matter is ripe for review. Having carefully considered each Motion for Summary Judgment, the court enters the following findings and Order.

**FINDINGS AND CONCLUSIONS**

**I.   Administrative History**

On July 27, 2012, and September 11, 2012, plaintiff filed applications for a period of disability and disability insurance benefits under Title II and supplemental social security income under Title XVI, respectively. (Tr. 236, 245). Plaintiff alleged a period of disability beginning January 15, 2011. (Tr. 50). After these applications were denied initially and upon reconsideration (Tr. 167, 180, 188), a hearing was held before an Administrative Law Judge ("ALJ") on December 3, 2014. (Tr. 66). The ALJ issued a decision on April 10, 2015, in which she found plaintiff not disabled. (Tr. 50-60). Plaintiff requested review of this decision. (Tr. 31). This request was denied by the Appeals Council on September 27, 2016. (Tr. 1). Therefore, the ALJ's April 10, 2015

decision became the final decision of the Commissioner. Plaintiff then initiated this action for judicial review of the ALJ's decision.

## II. Factual Background

The court adopts and incorporates the ALJ's factual findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The court finds that the ALJ's decision was, in part, not based on substantial evidence.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity (RFC), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

**C. The Administrative Decision**

At Step One of the sequential evaluation, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of his injuries. (Tr. 52). At Step Two, the ALJ found that plaintiff had the following severe, medically determinable impairments: lumbar degenerative disc disease and degenerative joint disease of the knees. (Tr. 52). The ALJ then found at step three that none of plaintiff's impairments or any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404 Subpart P, Appendix 1. (Tr. 55-56).

Upon review of the record, the ALJ found that the plaintiff had the RFC to perform light work except that plaintiff be allowed to alternate between standing and sitting at will in order to relieve pain or discomfort. (Tr. 56). Additionally, the ALJ found that the plaintiff must never use ladders, ropes or scaffolds and is limited to only occasional balancing, stopping, kneeling,

crouching, crawling, and use of ramps and stairs. (Tr. 56). Furthermore, the ALJ found that plaintiff must also avoid concentrated exposure to excessive vibration and to hazardous conditions, such as unprotected heights and dangerous machinery. (Tr. 56).

At Step Four, the ALJ then found that plaintiff could perform his past relevant work as a mail clerk, an order clerk, or telephone operator. (Tr. 59-60). Thus, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act from the alleged onset date, January 15, 2011, through the date of the ALJ's decision, April 10, 2015. (Tr. 59-60).

**D. Discussion**

The court has closely read plaintiff's memorandum of law (#12) supporting her Motion for Summary Judgment (#11). Plaintiff has made the following assignments of error:

I. The ALJ failed to give legally sufficient reasons for finding plaintiff's testimony not credible;
II. The ALJ failed to give legally sufficient reasons for rejecting the consultative psychologist's opinion;
III. The Appeals Council improperly failed to vacate the ALJ's decision upon receiving new evidence which plaintiff alleges fills evidentiary gaps in the record; and
IV. The ALJ failed to obtain an explanation for an apparent conflict between a vocational witness and the Dictionary of Occupational Titles ("DOT").

(#12) at 5-6. The court will review these allegations of error to determine whether they are based upon substantial evidence.

**1. Credibility of plaintiff's testimony**

Plaintiff alleges that the ALJ's credibility determination as to his testimony lacked substantial evidentiary foundation. (#12) at 14. Specifically, plaintiff argues that the ALJ failed to identify and explain the testimony she found non-credible and did not sufficiently explain how plaintiff's sporadic daily activities were the equivalent of working a full workday over five days a week. (#12) at 15.

Social Security Ruling 96-8p explains that the RFC assessment "'must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting SSR 96-8p, 61 Fed. Reg. at 34,478). "'[A] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' Id. (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). A court must not be "left to guess" as to how the ALJ arrived at her conclusions. Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015).

In her review of the record, the ALJ evaluated the credibility of plaintiff's testimony in two ways. First, the ALJ compared the plaintiff's subjective reports of his own symptoms to the objective medical record. (Tr. 58). Second, the ALJ compared plaintiff's subjective reports of his limitations to his own testimony regarding his daily physical activities. The court will discuss each step in turn. (Tr. 58).

### a. Review of the objective medical record

Before her discussion of the medical record, the ALJ provided a lengthy review of plaintiff's testimony about the plaintiff's alleged symptoms. Plaintiff testified that he is unable to work now because of spasms and pain in his lower back. (Tr. 57). Plaintiff further testified that because of this pain, he is unable to walk, sit, sleep, or concentrate, and that this pain is relieved by resting in certain postural positions three or four times per day for fifteen to twenty minutes at a time. (Tr. 57). Testifying that he "hurts all the time," plaintiff stated that when he walks too far, he has to sit down and lean forward to take pressure off his back. (Tr. 57). Plaintiff estimated that

he could stand about five-to-ten minutes at a time before having to sit down again. (Tr. 57). When asked if he could perform a "sit down" job, plaintiff testified that even sitting down caused back pain and spasms. (Tr. 57).

Instead of working, plaintiff testified that he stays at home and cares for his children, including his three-year-old son, with the occasional assistance of his mother and older son. (Tr. 57). Due to the worsening of his back pain, plaintiff testified that he does not do much around the house anymore. (Tr. 57). Plaintiff testified that he has no hobbies, but tries to attend church once a week. (Tr. 57). Plaintiff testified that he has trouble dressing himself, and uses a "wand" to wash himself. (Tr. 57). Plaintiff stated that he does not cook, and relies on his wife to provide leftovers that he can microwave. (Tr. 57). When asked, plaintiff testified that he can pick up a gallon of milk using both hands, and that he rides a cart when he visits the grocery store. (Tr. 57).

The ALJ concluded that plaintiff's allegations were only partially supported by the medical record. Specifically, the ALJ noted that the plaintiff's initial surgery in 2009 appeared to have left plaintiff with mostly mild residual symptoms until mid-2012, on or about plaintiff's alleged onset date, when he developed additional foraminal stenosis. (Tr. 58). After that point, the ALJ noted that plaintiff's symptoms were controlled with pain management until July 2013, when plaintiff began experiencing more episodes of radicular symptoms, which resulted in more surgery. (Tr. 58). In conclusion, the ALJ stated that the medical record "does not contain any medical evidence or opinions from claimant's treating physicians that adequately support limitations greater than those set forth in this decision." (Tr. 58).

Defendant contends that the ALJ's characterization of the record is reasonable. Defendant argues that in addition to evaluating the medical record until July 2013, the ALJ noted that plaintiff

"recovered" from his second surgery in 2014, and that plaintiff's symptoms after this surgery were effectively controlled with pain medication. (#16) at 9. However, the court is unable to find any discussion of plaintiff's symptoms after July 2013 in the ALJ's decision.

While discussed by the defendant in her brief, Exhibits B16F through B22F received no analysis by the ALJ. These exhibits contain medical records from multiple treating physicians detailing plaintiff's condition from July 2013 into 2015. While ALJ did provide a cursory citation to Exhibits B16F – B18F in passing (see Tr. 53), these exhibits received no analysis and no explanation was provided as to the weight they were given in determining plaintiff's RFC. There is no indication from the ALJ's decision that she reviewed exhibits B19F through B22F. In turn, many of these exhibits contain evidence which directly conflicts with the ALJ's finding. These evidentiary conflicts are for the ALJ to resolve, not a reviewing court. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Exhibits 16F through 22F lack analysis and explanation by the ALJ, leaving the court to guess how the ALJ arrived at her conclusion about plaintiff's ability to perform relevant functions.

While current case law instructs that this court should not search the record for evidence that would support the Commissioner's decision that was not first analyzed by the ALJ, the court highlights these Exhibits and the information they contain for the limited purpose of demonstrating the need for further administrative review that incorporates and appropriately weighs such evidence.

Exhibit B16F contains numerous medical records from various physicians who treated plaintiff at Carolinas Medical Center throughout 2013. (Tr. 536-562). In a visit note dated September 5, 2013, Dr. Felix Muniz stated that plaintiff presented with lumbar radiculopathy, low

back pain, continued myofascial dysfunction, and rated his pain 6/10 while medicated. (Tr. 555). Dr. Richard Park evaluated plaintiff in a later visit on November 5, 2013, noting plaintiff's back pain, lumbar radiculopathy, and myofascial dysfunction were still present. (Tr. 553). During this visit, plaintiff again rated his pain 6/10, and Dr. Park noted plaintiff's reports that his medications did not last the full eight hours. (Tr. 553).

Exhibit B17F contains medical records from Dr. William Hunter, the physician who performed plaintiff's second surgery on March 21, 2014. (Tr. 562). In an evaluation on February 25, 2014, two months before plaintiff's second lumbar surgery, Dr. Hunter stated that plaintiff's second surgery would have a "diminished" success rate given plaintiff's history of back difficulties. (Tr. 567). In a visit dated April 16, 2014, one month after plaintiff's second surgery, Dr. Hunter stated plaintiff again presented with back pain and leg pain, both aggravated by certain movements. (Tr. 562).

Also undiscussed by the ALJ are medical records from Dr. Robert Sullivan, a treating physician who evaluated plaintiff several times after his surgery by Dr. Hunter. (Tr. 536-543). Exhibits B16F and B20F contain a visit note dated November 6, 2014, in which Dr. Sullivan stated that neither of plaintiff's lumbar surgeries provided benefit, and that plaintiff was forced to quit his job due to pain. (Tr. 536; Tr. 582). In a letter from the same date, Dr. Sullivan stated that plaintiff was "suffering from chronic pain, which we have not [been] able to get controlled." (Tr. 538).

Exhibit B18F contains a report by Dr. Richard Park, who evaluated plaintiff on December 2, 2014. (Tr. 572-575). In his report, Dr. Park stated that plaintiff continued to suffer from low back pain with radiculopathy secondary to post-laminectomy syndrome, and myofascial pain. (Tr.

572). Dr. Park also reported that plaintiff described his pain as a constant 5-6/10. (Tr. 572). Dr. Park reported that plaintiff's pain is aggravated by activities and relieved by rest. (Tr. 572). Likewise, Exhibit B21F contains medical records dated December 23, 2014 from plaintiff's treating psychologist, Dr. Sally Duffy, noting plaintiff's pain is "still severe" despite his second surgery. (Tr. 583).

Exhibit B20F contains medical records from Dr. Stephen Pociask, another one of plaintiff's treating physicians. (Tr. 576-582). During two office visits dated January 30, 2015 and April 1, 2015, Dr. Pociask noted that plaintiff continued to suffer from low back pain with lumbar radiculopathy and myfascial pain despite his second surgery. (Tr. 576, 578). Plaintiff rated his pain on both occasions as 6/10. Dr. Pociask also noted that plaintiff's pain is aggravated by activity and relieved by rest and medication. (Tr. 578).

\*\*\*

As earlier mentioned, it is not the providence of the court to engage in fact-finding exercises in the first instance or reweigh conflicting evidence. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013); see also Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir.1986) (holding that without an explanation from the ALJ, "it is simply impossible to tell whether there was substantial evidence to support the determination"). The court is not to speculate as to the conclusion at which the ALJ might have arrived had she reviewed and discussed these exhibits. Without analysis and explanation by the ALJ as to the medical records and conflicting evidence contained within the abovementioned exhibits, the court is left to guess in such a way that it cannot meaningfully review the ALJ's findings. Mascio, 780 F.3d at 638.

### b. Review of plaintiff's limitations and daily activities

In addition to the objective medical record, the ALJ also found that the plaintiff's testimony about his daily activities cast doubt on the alleged severity of his symptoms. Specifically, the ALJ noted that the plaintiff cared for himself without assistance; cared for his school-aged children while his wife worked; prepared simple meals; managed his finances; watched television; and attended church. (Tr. 58). The ALJ also discussed that plaintiff did engage in work activity after the alleged onset date, though this work did not qualify as substantial gainful activity. (Tr. 58). These activities, she found, were not consistent with plaintiff's complaints "of totally disabling symptoms and limitations." (Tr. 58).

While the appellate court in Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994) held that "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life," id. (Hall, J. concurring), the circuit has long held that an individual's ability to perform sporadic activities does not foreclose a claim of disability. Totten v. Califano, 624 F.2d 10, 12 (4th Cir. 1980). An individual does not have to be totally helpless or bedridden in order to be found disabled under the Social Security Act. Id. Building on Totten, an ALJ "must explain how he determined that performing a certain activity for a short period translates into an ability to perform a different activity for a full workday." Ashcraft v. Colvin, No. 3:13-CV-417, 2015 WL 9304561, at *12 (W.D.N.C. Dec. 21, 2015) (citing Mascio, 780 F.3d 632, 636-37).

While the ALJ found that plaintiff's ability to perform certain tasks during the day discredited plaintiff's complaints of disability, her explanation as to how she reached that conclusion is lacking and that explanation is simply not optional under Mascio. Specifically, the ALJ did not explain how or why she determined that plaintiff's ability to sporadically care for

himself and his children (with assistance), watch television, attend church, manage his finances, and prepare simple meals translated into an ability to perform the plaintiff's past work as a mail clerk, order clerk, or telephone operator. Though the ALJ found that these activities consumed a "substantial" part of plaintiff's day, there was no explanation as to why plaintiff's ability to perform these activities inside his home for any amount of time demonstrated his ability to gainfully perform entirely different tasks outside the home for a full workday. (Tr. 58). Without such an explanation, the court is left to guess as to how the ALJ arrived at her conclusion that plaintiff is able to perform the relevant functions identified in the ALJ's RFC. Ashcraft at *7.

**2.    Rejection of consultative psychologist's opinion**

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Dr. Morris Britt, who performed a consultative psychological evaluation of the plaintiff on January 11, 2013. (#12) at 18. Plaintiff asserts that the ALJ speculated that Dr. Britt merely wrote down what he told him, and failed to identity any other medical evidence or opinions in support of her rejection of Dr. Britt's opinions. (#12) at 18.

In support of his argument, plaintiff asserts that a consultative examiner normally considers the patient's signs, symptoms, and complaints in addition to testing when evaluating the patient. (#12) at 19. Such an evaluation may include a report of plaintiff's subjective statements, but medical opinion evidence based largely on subjective statements should not be given any significant weight. See Martin v. Colvin, No. 1:15-CV-203-GCM, 2016 WL 3514299, at *3 (W.D.N.C. June 27, 2016) (citing Bishop v. Comm'r of Soc. Sec'y, 584 Fed. App'x 65, 67 (4th Cir. 2014)).

Plaintiff relies on a case from the Seventh Circuit, Aurand v. Colvin, 654 F. App'x 831,

837 (7th Cir. 2016), which holds that a psychological assessment is by necessity "based on the patient's report of symptoms and responses to questioning." While the Seventh Circuit does not bind this court, such a case can be persuasive authority.

Defendant argues that this district has extended the holding in Martin to opinions by mental health professionals performing consultative mental health evaluations. (#16) at 10. In support of her argument, defendant cites Harris v. Colvin, No. 5:16CV005-DSC, 2016 WL 4487891, (W.D.N.C. Aug. 25, 2016), where the ALJ properly afforded little weight to the opinion of Dr. Rasheda Ahsanuddin, a consultative psychiatrist.

In Harris, the ALJ rejected Dr. Ahsanuddin's opinion because in addition to being based largely on plaintiff's subjective reports, her opinion was not supported by the objective medical evidence in the record and conflicted with the information plaintiff gave to another consultative mental health professional. Harris at *4. The instant case is distinguishable from Harris. Unlike the ALJ in Harris, the ALJ in the instant case did not note any inconsistencies in what the plaintiff told various consultative mental health professionals. Further, the ALJ's incomplete review of the medical record, as discussed at length above, raises questions as to the foundations of the ALJ's finding that the medical record provided "good reasons for questioning the reliability of the [plaintiff's] subjective complaints." (Tr. 55).

Although the ALJ found that Dr. Britt's opinions were "vague" and lacked credibility as he was a one-time examiner, (Tr. 54-55), the court cannot fairly determine whether the ALJ's decision to afford Dr. Britt's opinions little weight was based on substantial evidence given the ALJ's incomplete review and limited discussion of the medical record. Specifically, the court notes that the ALJ did not review Exhibit B21F, the medical opinion of Dr. Sally Duffy, plaintiff's

*treating* psychologist, which could corroborate some of Dr. Britt's evaluation. (Tr. 583-593). Without such analysis and explanation by the ALJ, the court cannot meaningfully review the ALJ's findings. Mascio, 780 F.3d at 638.

### 3. Remaining Allegations of Error

Plaintiff has two additional allegations of error, which relate to purportedly new evidence and an alleged conflict between a vocational witness and the Dictionary of Occupational Titles ("DOT"). (#12) at 6 & 9. While it is clear at this point that remand is in order and that any new evidence will be subject to consideration by the ALJ on remand, the court will consider these arguments to be thorough.

The purported new evidence relates to a checklist by plaintiff's treating physician, Dr. Sally Duffy, dated July 10, 2015. (Tr. 15), which was well after the ALJ issued his decision. Such checkbox forms are entitled to "little, if any, weight." Williams v. Colvin, No. 1:14-CV-00018-MOC, 2015 WL1000321, at *7 (W.D.N.C. Mar. 6, 2015). As noted above, the ALJ left un-reviewed the substantive medical records of Dr. Duffy in Exhibit B21F. While a bevy of un-reviewed medical records creates an evidentiary gap, a retrospective checkbox form does little to fill that gap.

Plaintiff points to an alleged conflict between the testimony of the vocational expert and the description of job functions under the DOT as it relates to a sit-stand option and jobs identified by the vocational expert. Upon review of the ALJ's decision and the testimony in question, there is no conflict. The vocational expert testified that the DOT was silent as to a sit-stand option, so it was proper for the expert to supplement the job descriptions. See Lusk v. Astrue, 1:11-cv-196, 2013 WL 498797, at *5 (W.D.N.C. Feb. 11, 2013). Here, the testimony of the vocational expert

properly supplemented the job descriptions and was appropriately reviewed by the ALJ. See (Tr. 60). Accordingly, the court finds that the ALJ's findings related to the plaintiff's two remaining allegations of error were supported by substantial evidence. Thus, these remaining allegations of error would not, standing alone, form a basis for remand. The infirmity here lies in the unexplained conclusions reached by the ALJ, making the hypothetical she posed to the vocational expert unreliable on review.

**E. Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Unable to find that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be vacated.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner is **VACATED;**

(2) Plaintiff's Motion for Summary Judgment (#11) is **GRANTED;**

(3) The Commissioner's Motion for Summary Judgment (#15) is **DENIED;** and

(4) This action is **REMANDED** for further administrative proceedings.

Signed: August 21, 2017

Max O. Cogburn Jr
United States District Judge